## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **JOHN GALLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 2:15-cv-00047-JDL** |
| | ) | |
| **KIRK KREUTZIG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE

This case concerns a business dispute between plaintiff John Galley, a Maine resident, and defendant Kirk Kreutzig, an Illinois resident. Galley brought suit in Maine state court for breach of contract, among other causes of action. ECF No. 1-2. Kreutzig entered a limited appearance, moving to dismiss Galley's complaint for lack of personal jurisdiction, ECF No. 4 at 2, and then removed the case to this court, ECF No. 1. After careful consideration, I conclude that the exercise of personal jurisdiction over Kreutzig is proper. I also deny Kreutzig's request for a transfer of venue,[1] and deny Galley's motion to strike portions of Kreutzig's reply brief.

### I. FACTUAL AND PROCEDURAL BACKGROUND

For purposes of Kreutzig's motion to dismiss, Galley has the burden of producing prima facie evidence that demonstrates the court's personal jurisdiction over Kreutzig. *Daynard v. Ness, Motley, Loadhold, Richardson & Poole, P.A.*, 290

---

[1] I treat Kreutzig's motion to dismiss under the doctrine of *forum non conveniens* as a motion to transfer venue. *See infra.*

F.3d 42, 50 (1st Cir. 2002).  I accept Galley's properly documented evidentiary proffers as true, whether or not the evidence is disputed.  *Id*. at 51.  I also accept Kreutzig's evidence where it does not contradict Galley's.  *Id*.  Through this lens, the parties' affidavits show the following facts:

Galley and Kreutzig have been friends since meeting as teenagers in Hinsdale, Illinois, roughly 50 years ago.  ECF No. 4 at 40.  Kreutzig still resides in Illinois, while Galley moved to Maine around 15 years ago.  *Id*. at 39-40.  Galley is a retired attorney, while Kreutzig operates Orion4Sight, an Illinois corporation that manufactures sunglasses.  *Id*. at 40.

In September of 2013, Kreutzig and his wife visited Galley in Maine.  ECF No. 10-1 at 5.  Kreutzig brought along Orion4Sight marketing materials, and the two "engaged in extensive discussions" about the business.  *Id*.  At some point, the two agreed that Galley would undertake efforts to make Orion4Sight sunglasses available for purchase on Amazon.com.  *Id*. at 6.  In the spring of 2014, the parties also agreed that Galley would launch a Kickstarter campaign for Orion4Sight sunglasses.  *Id*. at 3.  Galley claims that under this arrangement, he was to incur all of the expenses of selling sunglasses through Kickstarter, and was to receive all of the profits.  *Id*.

Galley enrolled in several online sales and marketing classes in furtherance of the Amazon and Kickstarter projects.  *Id*. at 5-6.  Kreutzig partially reimbursed Galley for these courses by mailing checks to him in Maine.  *Id*.  Kreutzig also sent marketing materials and sunglass samples to Galley for Galley's use at a trade show in the summer of 2014.  *Id*.  In the winter of 2014, Kreutzig contacted a friend of

Galley's, Linda Hanson, about product testing the sunglasses in her job as a ski instructor at Sugarloaf. *Id*. at 5. Kreutzig mailed Hanson several pairs of sunglasses to test. *Id*.

Ultimately, Galley raised more than $300,000 dollars through Kickstarter. ECF No. 1-2 at 6. The Kickstarter campaign included sales of Orion4Sight sunglasses to forty-seven people in Maine. ECF No. 10-1 at 6-7. Kreutzig shipped these orders from Illinois in November of 2014. *Id*. at 6. Galley also obtained "vendor status" on Amazon, which enabled him to sell Orion4Sight sunglasses through Amazon's website. ECF No. 1-2 at 6.

The parties' relationship soured for reasons not relevant here. Galley claims that he and Kreutzig entered into a binding partnership agreement. *Id*. at 9. Kreutzig claims that the relationship is nothing more than a sales representation agreement with Galley working as a commissioned sales representative. ECF No. 4 at 42. Galley filed his complaint in the Knox County Superior Court in Maine on December 5, alleging breach of contract, fraud, and other counts. ECF No. 1-2 at 15. On January 16, 2015, Kreutzig filed suit against Galley in federal court in the Northern District of Illinois, alleging breach of fiduciary duty, tortious interference with contractual rights, and unjust enrichment. ECF No. 10-4 at 13-17.

## II. DISCUSSION

### A.    Motion to Dismiss for Lack of Personal Jurisdiction

In a diversity case, the forum state's long-arm statute governs whether a district court may properly exercise jurisdiction over a nonresident defendant. *See*,

*e.g., Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Maine's long-arm statute is coextensive with the constitutional requirement of due process. 14 M.R.S.A. § 704-A(1) (2014). Accordingly, the question presented is whether the exercise of personal jurisdiction over Kreutzig comports with the Due Process Clause of the United States Constitution. *See Henderson v. Laser Spine Inst.*, 815 F. Supp. 2d 353, 367 (D. Me. 2011).

The Due Process Clause permits the exercise of jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quotation omitted). For the exercise of jurisdiction in a specific case[2] to meet this standard, three criteria must be present: relatedness, purposeful availment, and reasonableness. *Bluetarp Fin., Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72, 80 (1st Cir. 2013). The plaintiff carries the burden of producing prima facie evidence to satisfy each criterion.[3] *Id.* at 79.

---

[2] Personal jurisdiction may be either general or specific. General jurisdiction, which exists when a defendant has continuous and systemic contacts with a forum state, allows a defendant to be brought into court even in matters unrelated to the nature of the defendant's contacts. *See, e.g., Harlow v. Children's Hosp.*, 432 F.3d 50, 64 (1st Cir. 2005). In contrast, specific jurisdiction conveys jurisdiction only over a case that relates to the defendant's contacts with the forum. *See, e.g., N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005). Because Galley makes no claim that Kreutzig's contacts with Maine permit the exercise of general jurisdiction, *see* ECF No. 10, I limit my analysis to the specific jurisdiction question.

[3] A district court has three separate standards available to it when considering a personal jurisdiction question – the conventional "prima facie" test, as well as "likelihood" and "preponderance" standards for when the jurisdictional question implicates more serious evidentiary issues. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-47 (1st Cir. 1995). Because the parties do not indicate a need for a more searching evidentiary inquiry, and because I discern none independently, I apply the prima facie standard.

### 1. Relatedness

The relatedness prong is satisfied if the cause of action arises from or relates to the defendant's contacts with the forum state. *Id*. The relatedness standard is "flexible" and "relaxed." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (citing *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994)). However, the connection between the cause of action and the forum state "must be more than just an attenuated" one. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008). For contract claims, relatedness is satisfied if a defendant's contacts with the forum state were instrumental in either the formation of the contract or its breach. *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). As for tort claims, there must be a sufficient "causal nexus" between the defendant's contacts and the plaintiff's cause of action. *See id*.

Galley's contractual, quasi-contractual, and equitable claims – for declaratory relief, a permanent injunction, breach of contract, promissory estoppel, and unjust enrichment – are sufficiently related to Kreutzig's contacts with Maine to satisfy due process. Galley has produced prima facie evidence that he and Kreutzig engaged in extensive discussions in Maine about the eyewear program involved in this suit. ECF No. 10-1 at 5. Kreutzig's visit to Maine was thus instrumental to the formation of any contract that arose between the parties. In addition, Galley and Kreutzig agreed that Galley, while based in Maine, would run a Kickstarter campaign for Orion4Sight sunglasses and endeavor to have the sunglasses sold on Amazon.com. *Id*. at 3. Galley's performance in Maine of services related to the eyewear gives the alleged

contract a substantial connection to Maine that satisfies relatedness. *See Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd.*, 298 F.3d 1, 10 (1st Cir. 2002) (noting that relatedness is present if claim arises from a contract that has a substantial connection to the forum state).

Galley's sole tort claim – for fraud – is also sufficiently related to Kreutzig's Maine contacts.  Galley alleges he was defrauded when Kreutzig had an opportunity to clarify Galley's understanding of the parties' agreement, but failed to do so, inducing further reliance on Galley's part.  ECF No. 1-2 at 12-13.  By discussing the Orion4Sight business with Galley in Maine, engaging Galley's labor in Maine, and sending money and product into Maine, Kreutzig had contacts with Maine that contributed to Galley's reliance on the alleged misrepresentation.  There is, therefore, a sufficient causal nexus between Kreutzig's Maine contacts and Galley's fraud claim.

### 2. Purposeful Availment

"Specific jurisdiction further requires that the defendant's contacts represent a purposeful availment of the privilege of conducting activities in the forum state[.]" *Bluetarp Fin.*, 709 F.3d at 82 (quotations omitted).  This requirement ensures that jurisdiction is not based on random or isolated contacts with a forum state. *Hannon v. Beard*, 524 F.3d 275, 284 (1st Cir. 2008).  The cornerstones of the inquiry are whether the defendant's contacts were voluntary and whether they made it foreseeable that a defendant could be brought before the state's courts.  *Id*. Underpinning the purposeful availment rule is an understanding that "when a defendant deliberately targets its behavior toward the . . . economy of a particular

forum, the forum should have the power to subject the defendant to judgment regarding that behavior." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011).

Galley suggests that Kreutzig's conduct satisfied the purposeful availment requirement because it involved business activities with a Maine resident. ECF No. 10 at 14. In response, Kreutzig argues that the parties' agreement was Galley's idea, and that the bulk of the communications between the two were initiated by Galley. ECF No. 4 at 15-16.

Kreutzig's efforts to paint himself as a largely passive actor in the parties' business relationship belies the fact that a relationship existed. By Kreutzig's own admission, he "allowed Galley to assist with Internet marketing and sales for Orion4Sight" while Galley operated from his base in Maine. ECF No. 4 at 42. While a business contract, without more, cannot establish purposeful availment, *see Bluetarp Fin.*, 709 F.3d at 82, Galley offers prima facie evidence of other significant contacts with Maine in furtherance of this agreement: Kreutzig sent Galley eyeglass samples to use at trade shows, ECF No. 10-1 at 5, promotional brochures to assist in marketing, *id*. at 5-6, and reimbursement checks for business expenses, *id*. Kreutzig also reached out to another Maine resident to discuss product testing his sunglasses, and mailed several pairs of the sunglasses to that person for tests. *Id*. at 7. Additionally, Kreutzig's company fulfilled at least 47 orders of sunglasses for Mainers as a result of the Kickstarter campaign that is a focus of the dispute. *Id*. at 6-7. This is all behavior targeted toward Maine.

In short, Kreutzig deliberately entered into a business relationship with Galley, a Maine resident, with the understanding that Galley would engage in marketing and promotional activities from his base in Maine. *See Harlow*, 432 F.3d at 63 (noting that, in case involving provision of personal services, jurisdictional analysis should focus on where the services were rendered). Kreutzig mailed both money and products to Maine in furtherance of that relationship, in addition to shipping sunglasses to Maine customers after Galley launched the Kickstarter campaign that is a subject of this litigation. Kreutzig's actions made it foreseeable that he might be brought before Maine courts if litigation arose from his arrangement with Galley.

### 3. Reasonableness

Finally, the exercise of specific jurisdiction over an out-of-state defendant must be reasonable. *See, e.g.*, *N. Laminate Sales,* 403 F.3d at 26. The test of reasonableness weighs several factors designed to give definition to the higher concepts of "fair play and substantial justice" which are the touchstones of the inquiry. *See Pritzker v. Yari*, 42 F.3d 53, 63 (1st Cir. 1994). These factors include:

> [T]he defendant's burden of appearing; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several States in furthering fundamental substantive social policies.

*N. Laminate Sales,* 403 F.3d at 26 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Kreutzig protests that his burden to appear in Maine would be high; that Maine has little interest in this dispute because it involves an Illinois corporation

and implicates Illinois professional responsibility rules; and that Galley's interest in obtaining relief does not depend on litigating this case in Maine.  ECF No. 4 at 17-18. In response, Galley asserts that Maine has an interest in regulating its own commerce, in providing its citizens with access to courts where they reside, and in protecting its citizens from the torts of nonresident defendants transacting business in the state.  ECF No. 10 at 12-13.  Weighing these factors, the balance tips in favor of jurisdiction.

First, the burden Kreutzig will bear by litigating this case in Maine does not weigh against jurisdiction.  Because "mounting an out-of-state defense most always means added trouble and cost," this factor is only meaningful if a party can demonstrate a "special or unusual burden."  *Bluetarp Fin.*, 709 F.3d at 83 (quoting *Hannon*, 524 F.3d at 285).  Here, Kreutzig has not alleged more than the typical inconveniences of having to hire Maine counsel and incur travel costs.  ECF No. 4 at 17-18.  Kreutzig's burden, then, is a neutral factor.  So too is the shared interest of the two states involved: Maine and Illinois.  Neither party provides any reason, nor do I discern one, to conclude that a finding of jurisdiction "would speak one way or another" to the common interests of all sovereigns in advancing particular policies. *See Adelson v. Hananel*, 652 F.3d 75, 84 (1st Cir. 2011).

Judicial efficiency is also a neutral factor.  While as Kreutzig asserts, Illinois' professional responsibility rules may ultimately be relevant to the merits of this dispute because Galley is an Illinois-licensed attorney who previously provided legal representation to Kreutzig, *see* ECF No. 4 at 12-13, it remains to be determined

whether Maine or Illinois law governs the imposition of liability in this case. Moreover, while a case related to the same underlying events as this one has been filed by Kreutzig in the Northern District of Illinois, ECF No. 10-4 at 3,  the First Circuit has noted that the pendency of related cases in other jurisdictions is insufficient, standing alone, to "tip the constitutional balance," *Bluetarp Fin.*, 709 F.3d at 83.

The remaining factors tip the scale in Galley's favor.  Contrary to Kreutzig's assertion that Maine has no interest in this dispute beyond Galley's Maine citizenship, the First Circuit has recognized that "Maine has an interest in redressing harms committed . . . by out of state [defendants]" and that Maine "has a stake in being able to provide a convenient forum for its slighted residents."  *Id.*  Finally, Galley's interest in convenient and effective relief is best served by litigation in Maine. *See Sawtelle*, 70 F.3d at 1395 ("[A] plaintiff's choice of forum must be accorded a degree of deference with respect to the issues of its own convenience.").

Accordingly, I conclude that the exercise of personal jurisdiction over Kreutzig is reasonable.  No substantial injustice or fundamental unfairness is worked by having Kreutzig travel from Illinois to Maine to defend and assert claims that arise from his business relationship with a Maine resident and relate to business activities that occurred in Maine as well as money and products he sent into the state. Kreutzig's motion to dismiss for lack of personal jurisdiction is denied.

## B.    Motion to Dismiss Under Forum Non Conveniens

Kreutzig next contends that even if personal jurisdiction is present, this case should be dismissed under the doctrine of *forum non conveniens*.  ECF No. 4 at 19.

10

Kreutzig notes that he has not specifically moved to transfer venue pursuant to 28 U.S.C. § 1404 because he filed his *forum non conveniens* motion in state court before this action was removed.  ECF No. 12 at 7 n.6.  However, he also acknowledges that he would seek a transfer in the event he is denied *forum non conveniens* relief.  *Id*. Because the doctrine of *forum non conveniens* is not applicable in federal court when the alternative forum is another federal court, *see Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007), and because the parties' briefs have addressed the applicable criteria and the alternative venue, I treat Kreutzig's *forum non conveniens* motion as a motion to transfer to the Northern District of Illinois.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]"  28 U.S.C. § 1404(a) (2014).  In addition to convenience, this analysis considers the availability of documents, the possibility of consolidation, and the order in which the district courts obtained jurisdiction. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).  The moving party bears a "substantial burden" of demonstrating why a change of venue is appropriate.  *Demont & Assocs. v. Berry*, 77 F. Supp. 2d 171, 173 (D. Me. 1999).  Additionally, "[w]here identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice of venue decision."  *Coady*, 223 F.3d at 11 (citing *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)).

In favor of transfer, Kreutzig argues that Illinois would be a more convenient location for the parties and witnesses, and stresses that Illinois' professional

11

responsibility rules could bear on liability issues because of Galley's membership in the Illinois bar and professional duties he may have owed to Kreutzig.  ECF No. 4 at 20.  Galley responds that the District of Maine is a proper venue because a substantial part of the events giving rise to the lawsuit occurred here.  ECF No. 10 at 17-18. Although this is a close question, for reasons I will explain, the "first-filed rule" decides this matter.

The first-filed rule exists to further sound judicial administration and avoid duplicative efforts by courts and parties litigating identical actions by favoring the action filed first.  *See Dinan v. Alpha Networks, Inc.*, 803 F. Supp. 2d 71, 75-76 (D. Me. 2011).  Here, Galley filed his complaint on December 5, 2014, ECF No. 1-2 at 15, and Kreutzig was served on January 6, 2015, ECF No. 1 at 1.  Kreutzig then filed his suit in the Northern District of Illinois on January 16, 2015.  ECF No. 10-4 at 17. Because Galley filed in December alleging a breach of contract that occurred in October, *see* ECF No. 1-2 at 7, his complaint does not reveal a "race to the courthouse" that would justify abrogation of the first-filed rule. *See Cianbro*, 814 F.2d at 11.  In contrast, Kreutzig's filing of a complaint in Illinois just 10 days after learning of Galley's suit in Maine suggests a "quick response . . . designed to get home-court advantage," *see id.*, which the first-filed rule seeks to discourage.

If the first-filed rule were not implicated, the analysis, while close, would still favor Galley.  The relevant factors here do not strongly favor either venue.  Much of the evidence regarding the existence and terms of the parties' agreements is contained in e-mails and testimony about the content of conversations, meaning that

12

the availability of documents in either forum is not a decisive factor.  Likewise, the convenience factor is in equipoise – in either district, one litigant will be burdened substantially more than the other, and I do not find that Galley's having lived in Illinois 15 years ago makes it significantly more convenient for him to travel there now, as Kreutzig claims.  It is also not apparent that witnesses will be centered in one district or the other.  *See* ECF No. 10 at 16; ECF No. 4 at 20.  Neither party identifies with any specificity a critical or necessary witness whose availability could hinge on the choice of venue.  *Id.*

A court's familiarity with the applicable law has also been recognized in this circuit as an appropriate factor in deciding a motion to transfer.  *See World Energy Alternatives, LLC v. Settlemyre Indus., Inc.*, 671 F. Supp. 2d 215, 218-19 (D. Mass. 2009).  Kreutzig contends that Illinois professional responsibility rules are implicated in this case, making the Northern District of Illinois a more appropriate forum.  ECF No. 4 at 12-13.  Accordingly, Galley's alleged role as Kreutzig's attorney may prove relevant to this dispute, and Illinois's rules of professional conduct may control one or more of the questions of law that are presented.  However, the same may be true with respect to Maine law.  Because Maine's choice of law analysis for contract actions that do not include choice-of-law provisions is highly fact intensive, *see State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶¶ 46-47, 995 A.2d 551, I decline to engage in that inquiry without a more fully developed record.  *See Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 73 (1st Cir. 2006) (noting that the forum state's choice-of-law rules apply in a diversity case).  Nevertheless, the record establishes a real possibility the Maine

law will govern the question of contract formation.  Without clarity as to which state's laws will ultimately govern this case, I consider this factor neutral.

Finally, because Galley did not object to the exercise of personal jurisdiction in Illinois, that court obtained jurisdiction first.  However, in view of my analysis of the preceding factors, this sole reason to favor venue in the Northern District of Illinois does not overcome the "strong presumption in favor of the plaintiff's choice of forum." S*ee Coady*, 223 F.3d at 11.  Accordingly, I conclude venue properly rests in Maine.

## C.   Motion to Strike

Galley has moved to strike Kreutzig's reply brief on the jurisdictional question. ECF No. 14.  Galley alleges that the brief raised "totally new material" regarding Galley's status as an Illinois attorney in violation of Local Rule 7, which provides that a reply memoranda "shall be strictly confined to replying to new matter raised in the objection or opposing memorandum."  *Id*. at 1-2 (citing Loc. R. 7(c)).

Galley's response to Kreutzig's motion to dismiss argues that litigating in Maine would comport with traditional notions of fairness.  ECF No. 10 at 15-16.  In his reply, Kreutzig uses Galley's status as an Illinois attorney to argue that Illinois would be the fairer venue for litigation.  *See* ECF No. 12 at 6-7.  Broadly speaking, this is responsive to an argument – the fairness of litigating in Maine – that Galley raised in his response brief.  Galley's reply, therefore, does not violate Local Rule 7.

## III. CONCLUSION

For the foregoing reasons, Kreutzig's motion to dismiss (ECF No. 4) is

**DENIED**.  Galley's motion to strike (ECF No. 14) is also **DENIED**.

**SO ORDERED.**

Dated:  May 15, 2015                                    /s/ Jon D. Levy_____
                                                                  U.S. District Judge

15